## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PATRICIA KELLY,

     Plaintiff,

v.                                    Case No.  8:23-cv-02529-TPB-CPT

SANOFI-AVENTIS U.S. LLC, ET AL.

     Defendant.

_____/

### Uniform Case Management Report

     The goal of this case management report is to "secure the just, speedy, and inexpensive determination of" the action. *See* Fed. R. Civ. P. 1. Under Local Rule 3.02(a)(2), this case management report should be used in all civil cases except those described in Local Rule 3.02(d). Individual judges may have additional case management preferences that can be found under each judge's name on the Court's website, flmd.uscourts.gov/judges/all.

## 1. Date and Attendees

> The parties may conduct the planning conference "in person, by telephone, or by comparable means[.]" *See* Local Rule 3.02(a)(1).

The parties conducted the planning conference on December 1, 2023. Connor Sears, Ara Ayvazian, Russell W. Lewis, and Pierce Jones attended the conference.

## 2. Deadlines and Dates

The parties request these deadlines and dates:

| Action or Event | Date |
|---|---|
| Deadline for providing mandatory initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). | Stipulated to forgo |

| | 26(a)(1) disclosures |
|---|---|
| Deadline for moving to join a party, *see* Fed. R. Civ. P. 14, 19, and 20, or amend the pleadings, *see* Fed. R. Civ. P. 15(a). | **Plaintiff's Position**: Deadline to amend has not passed. **Defendants' Position**: Time has passed. |
| Deadline for serving expert disclosures under Rule 26(a)(2), including any report required by Rule 26(a)(2)(B). | |
| Plaintiff | 4/4/2025 |
| Defendant | 5/2/2025 |
| Rebuttal | 5/16/2025 |
| Deadline for completing discovery and filing any motion to compel discovery. *See* Fed. R. Civ. P. 37; *Middle District Discovery* (2021). | 6/6/2025 |
| Deadline for moving for class certification, if applicable. *See* Fed. R. Civ. P. 23(c). | N/A |
| Deadline for filing any dispositive and *Daubert* motion. *See* Fed. R. Civ. P. 56. (Must be at least five months before requested trial date.) | 8/29/2025 |
| Deadline for participating in mediation. *See* Local Rules, ch. 4. The MDL court has appointed a settlement master that the parties have worked with for the past few years.  There have been ongoing discussions about resolution of groups of cases, as well as individual cases, with both group and individual settlements having been reached.  The parties intend to continue working toward early resolution of this case.  John Jackson has served as the mediator for the MDL.  His phone number is 262.706.1864. | 6/27/2025 |
| Date of the final pretrial meeting. *See* Local Rule 3.06(a). | 1/5/2026 |

| | |
|---|---|
| Deadline for filing the joint final pretrial statement, any motion in limine, proposed jury instructions, and verdict form. *See* Local Rule 3.06(b). (Must be at least seven days before the final pretrial conference.) | 1/12/2026 |
| Date of the final pretrial conference. *See* Fed. R. Civ. P. 16(e); Local Rule 3.06(b). | 1/26/2026 |
| Month and year of the trial term. | 2/2/2026 |

The trial will last approximately 10 days and be

☒ jury.

☐ non-jury.

## 3.   Description of the Action

On October 4, 2016, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") created *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL 2740, in the United States District Court, Eastern District of Louisiana, to coordinate pretrial discovery among thousands of individually filed product liability actions against manufacturers of the chemotherapy drug docetaxel (Taxotere), including Sanofi.  The MDL is pending before the Honorable Jane Triche Milazzo.  More than 15,000 lawsuits have been filed in the MDL against a number of defendants, and more than 10,000 cases are currently still pending in that Court, including approximately 6,000 naming only Sanofi.

On May 12, 2023, the MDL Court found that the "purposes behind consolidation [had] been served," and transferred 81 out of 200 "Wave 1" cases to "the appropriate district courts" in accordance with 28 U.S.C. § 1404, including five

3

transferred to this District.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Doc. 15836 (E.D. La. May 12, 2023) ("Transfer Order") at 1–2.

More recently, the MDL Court has started another wave of remands, which includes this case, as well as 36 other cases being transferred to the Middle District of Florida.  There are also 16 cases being transferred to the Southern District of Florida and four cases being transferred to the Northern District of Florida.

Moreover, the MDL Court has stated its intent to continue transferring cases from the MDL to federal district courts across the country in the near future.  In total, there are approximately 500 additional cases that have named Florida District Courts as their proper venue.

Plaintiff Patricia Kelly asserts that she was diagnosed with breast cancer on March 18, 2008. Plaintiff alleges that she was treated with a chemotherapy regimen that included Taxotere.  Plaintiff filed a short form complaint in MDL 2740 on October 8, 2019, alleging claims of strict liability—failure to warn, negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit, alleging permanent chemotherapy induced hair loss caused by Taxotere, which was designed, manufactured, and sold by Defendants. Plaintiff asserts that Taxotere was defective because it failed to warn about certain risks associated with the drug, namely permanent hair loss. The MDL Court transferred Plaintiff's case to this Court to complete dispositive motion practice, case-specific fact and expert discovery, expert and evidentiary challenges, pre-trial practice, and trial.  Transfer Order, at 5.

Sanofi disputes Plaintiff's claims.  Further, Sanofi contends that the Taxotere label was approved by the FDA and has always contained accurate, science-based information enabling doctors to make informed decisions about the benefits and risks of prescribing Taxotere within its approved indication.

**4. Disclosure Statement**

☒ The parties have filed their disclosure statement as required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03.

**5. Related Action**

☒ The parties acknowledge their continuing duty under Local Rule 1.07(c) to notify the judge of a related action pending in the Middle District or elsewhere by filing a "Notice of a Related Action." No notice need be filed if there are no related actions as defined by the rule.

**6. Consent to a Magistrate Judge**

> "A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." Local Rule 1.02(a). With the parties' consent, a district judge can refer any civil matter to a magistrate judge for any or all proceedings, including a non-jury or jury trial. 28 U.S.C. § 636(c).
>
> The Court asks the parties and counsel to consider the benefits to the parties and the Court of consenting to proceed before a magistrate judge. Consent can provide the parties certainty and flexibility in scheduling. Consent is voluntary, and a party for any reason can decide not to consent and continue before the district judge without adverse consequences. *See* Fed. R. Civ. P. 73(b)(2).

☐ The parties do consent and file with this case management report a completed Form AO 85 "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," which is available on the Court's website under "Forms."

☒ The parties do not consent.

**7.   Preliminary Pretrial Conference**

☐  The parties do not request a preliminary pretrial conference before the Court enters a scheduling order.

☒  The parties do request a preliminary pretrial conference, and the parties want to discuss:

As discussed below, this is one of many cases that are being remanded to district

courts in Florida.  Due to the volume of cases being transferred, Sanofi suggests a

discussion about how to manage the large influx of cases in the most efficient way.

**8.   Discovery Practice**

> The parties should read the Middle District Discovery Handbook, available on the Court's website at flmd.uscourts.gov/civil-discovery-handbook, to understand discovery practice in this District.

☒  The parties confirm they will comply with their duty to confer with the opposing party in a good faith effort to resolve any discovery dispute before filing a motion. *See* Local Rule 3.01(g); *Middle District Discovery* (2021) at § I.A.2.

**9.   Discovery Plan**

The parties submit the following discovery plan under Rule 26(f)(2):

A.   The parties agree to the timing, form, or requirement for disclosures under Rule 26(a):

☐  Yes.

☒  No; instead, the parties agree to these changes: The parties in MDL 2740 stipulated to forgo rule 26(a)(1) initial disclosures.  Accordingly, the parties agree that initial disclosures under Rule 26(a)(1) are unnecessary in this case.

B.   Discovery may be needed on these subjects:

**Discovery Overview**

Through coordinated proceedings in the MDL, the Court has facilitated general expert, corporate, and third-party discovery. *See* Transfer Order, at 44 ("Because all general fact and expert discovery has been completed in the MDL, the courts receiving these cases need not be concerned with facilitating general expert, corporate, and third-party discovery.").

General MDL discovery directed at Sanofi—which resulted in the production of 43 corporate custodial files comprising more than 500,000 documents (6.3 million pages), 39 total depositions of 28 witnesses (including nine 30(b)(6) depositions), and responses to more than 160 written discovery requests—concluded on December 15, 2018. *See* Transfer Order, at 8. While this body of general discovery remains available to plaintiffs for use in cases remanded from MDL 2740, no additional general discovery against Sanofi shall be permitted post-remand. *Id.*

Sanofi's position is that extensive general discovery against Sanofi, including punitive damages discovery, was conducted for the benefit of all cases pending in the MDL regardless of venue pursuant to the General Discovery Order entered in the MDL. Sanofi's position is that consistent with the purposes of an MDL, general and punitive damages discovery was not limited to issues relevant to Louisiana law. *See* Ann. Manual Complex Lit. § 22.8 (4th ed.) (MDL courts typically "direct initial discovery toward matters bearing on the defendants' liability to all plaintiffs"). Under the General Discovery Order, the MDL court limited

Plaintiffs to 30 depositions of Sanofi witnesses, including current and former employees and corporate representatives.   The deadline for general discovery against Sanofi expired on December 15, 2018.  Since that time, the MDL court has denied additional general discovery requests against Sanofi.

Sanofi disclosed information on 50 potential custodians.  Plaintiffs selected 36 custodians from the United States and seven from the European Union on which to conduct discovery.   Sanofi produced more than 576,100 documents (or 6,320,000 pages).  Many of these documents remain subject to protective orders of confidentiality.

In total, 28 company witnesses from Sanofi were deposed, including Sanofi's 30(b)(6) witnesses.  *See* Transfer Order at 8-9.  While this body of general discovery remains available to plaintiffs for use in cases remanded from MDL 2740, no additional general discovery against Sanofi shall be permitted post-remand.  *Id.* Accordingly, no case-specific 30(b)(6) depositions are to be taken, as all corporate discovery was completed in the MDL.   Notably, no case-specific 30(b)(6) depositions were requested or taken prior to trial in the two cases tried in the MDL.

Under PTO 68, the Court required Plaintiffs to produce dated photographs that depict their hair within five years of starting chemotherapy, during chemotherapy, within five years of completing chemotherapy, and recent photographs.  *Id.* at 12.

To date, minimal case-specific discovery has been conducted in this case. Specifically, limited records collection has occurred.  The exchange of Plaintiff and

8

Defendant Fact Sheets, was also undertaken in the MDL.  No case-specific fact depositions have been taken.

Before this case will be ready for trial, the parties will need to complete extensive discovery, including records collection, Sanofi may conduct written discovery (which was deferred by the MDL court until remand), many fact witness will be deposed, many treating doctors will be deposed, and the parties will need to conduct general and case-specific expert discovery.  *See* Transfer Order, at 44–45 (noting that case-specific discovery and dispositive, *Daubert*, and pre-trial motions are to be anticipated on remand).

In this case, like others previously consolidated in MDL 2740, Plaintiff claims she experienced permanent hair loss following treatment for breast cancer with the chemotherapy drug Taxotere.  As such, Plaintiff's claims entail complex questions of medical injury, medical causation, and personal and medical damages implicating many diverse aspects of her medical history.  These include her cancer diagnosis, care and follow-up; any treatment for, diagnosis or discussion of hair loss with any provider; other health issues bearing on cancer treatment options, hair loss, and quality of life such as genetic, hormonal, and autoimmune issues; and non-medical evidence regarding Plaintiff's hair and quality of life over time including photographs and evidence and testimony from cosmetic service providers, friends and family.  Anticipated discovery needs are guided by the parties' experience in the two bellwether cases tried in the MDL Court.

Each of the two MDL bellwether cases brought to trial required extensive case-specific document collection as part of trial work-up.  Due to the multi-step bellwether selection process and the complex nature of Taxotere cases, Plaintiff productions took place in several phases over more than two years, with each Plaintiff eventually producing 1,500–2,000 pages of documents following various disputes, searches, and productions.  In both trial cases, Plaintiffs ultimately produced hundreds of pages of responsive photographs, ESI, journals/blogs/personal notes, and patient education materials.  In addition, in each case the parties collected over 6,000 pages of medical records from 20+ facilities and medical providers.  Notably, medical records collection proved difficult and time-consuming given the passage of more than seven years between each Plaintiff's alleged injury and her trial—during which many of Plaintiffs' medical providers changed practices or records systems or simply destroyed old records.  Likewise, in this case, many years have passed since Plaintiff's alleged injury, creating similar challenges for case-specific document collection.

Plaintiffs with cases pending in MDL 2740 were not subject to case-specific written discovery beyond the initial Plaintiff Fact Sheet until such case was selected for bellwether work-up.  In the two MDL trial cases (as well as more than 20 other Sanofi bellwether cases that were ultimately dismissed with prejudice, withdrawn, or ruled ineligible for trial), the Court approved and Plaintiffs were served with several sets of case-specific Interrogatories (15-20 in total), Requests for Production (~25), and Requests for Admission (~25).  This discovery helped both to complete

the record and to focus the issues before trial, and many of the documents, information and admissions ultimately used at trial were produced in response to these requests.

The instant matter was not selected for bellwether treatment in the MDL and has never been subject to case-specific written discovery. *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Case Management Order No. 33 at ¶ 5(c). Given MDL experience, Sanofi anticipates serving written discovery in the above-captioned case on a similar scale to those tried in the MDL.

In each of the two bellwether cases brought to trial in the MDL, the parties produced preliminary witness lists in which the trial Plaintiffs identified 15–20 case-specific fact witnesses relevant to her claims. Accordingly, the parties deposed more than 15 fact witnesses in each case, including 8–10 case-specific medical treaters and 5–8 party and friend/family witnesses. In addition, the parties identified and deposed approximately 10 case-specific expert witnesses in each case.

As noted above, no case-specific depositions have been taken. Based on past experience, Sanofi anticipates deposing the plaintiff, fact witnesses, treating physicians, and experts.

### Electronically Stored Information

The parties agree that production of electronically stored information should comply with the terms of the MDL Court's ESI Protocol, *see In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pre-trial Order No. 49, Ex. 1 (E.D.

La. July 6, 2017), and Pretrial Order Governing Plaintiffs' Responsibilities Relevant to ESI; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pretrial Order No. 71A, Ex. 2 (E.D. La. Jan. 26, 2018).

In the MDL, the Court entered PTO 71 to govern Plaintiff's identification, preservation, collection and production of ESI. *Id.* at 10. PTO 71 outlined the relevant, potential sources of ESI Plaintiffs should search for responsive information; mandated reasonably diligent searches of the ESI Sources; identified search terms each Plaintiff or her attorney would run through available search functions in the ESI Sources; and required each Plaintiff to submit a written disclosure statement to Defendants to be produced with responsive documents. *Id.* In January of 2018, PTO 71 was amended and superseded by PTO 71A, which was identical in substance to PTO 71 but provided Plaintiffs additional time to comply with its requirements. *Id.*

**Privilege Issues**

The parties agree that trial-preparation materials should be protected in accordance with the MDL Court's ESI Protocol, *see In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pre-trial Order No. 49, Ex. 1 (E.D. La. July 6, 2017), and Protective Order; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pre-trial Order No. 50, Ex. 3 (E.D. La. July 6, 2017).

## Nature, Location, and Scope of Discoverable ESI

The parties agree that production of electronically stored information should comply with the terms of the MDL Court's ESI Protocol, *see In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pre-trial Order No. 49, Ex. 1 (E.D. La. July 6, 2017), and Pretrial Order Governing Plaintiffs' Responsibilities Relevant to ESI; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Pre-trial Order No. 71A, Ex. 2 (E.D. La. Jan. 26, 2018).

## Amending the Complaint

Plaintiff's Position:

Plaintiff Patricia Kelly asserts that all deadlines to amend her Complaint have not passed. Plaintiffs in the MDL had the opportunity to join additional parties and amend pleadings, but the context of the amendments which Plaintiffs sought must be addressed. Specifically, Plaintiffs sought to include additional factual allegations regarding Sanofi's conduct relevant to tolling/timeliness issues and to amend the definitional allegation of PCIA because the original allegation was vague as to when Plaintiffs were aware of such definition and because when a Plaintiff's PCIA developed and/or was discoverable is inherently Plaintiff-specific, necessarily an expert/medical issue, and not tied to a particular arbitrary date. MDL R. Doc. 8334 (Motion for Leave to File Plaintiffs' Third Amended Master Long-Form Complaint). Plaintiffs' proposed amendment alleged that there is "no single definition" for PCIA, and therefore the amount of time to establish permanent hair loss varies from patient to patient. See Id. The Court denied Plaintiffs' Motion for Leave to File Plaintiffs'

Third Amended Master Long-Form Complaint on December 12, 2019. See MDL R. Doc. 8702 (Order & Reasons Denying Pls.' Mot. for Leave to File Pls.' Third Am. Master Long-Form Compl. & Jury Demand).

Currently, the only plaintiff-specific allegations set forth by Mrs. Kelly are contained in her individual short form complaint. MDL R. Doc. 1463 (PTO 73). Pretrial Order No. 105 was entered by the Court, as an influx of requests to amend short form complaints ensued following the MDL Court's denial of leave to amend the Master Complaint, in an effort to streamline the filing of amendments for statute of limitations purposes. MDL R. Doc. 10338 (PTO 105). The Order was expressly titled: "Short Form Complaint Allegations and Amendments – Statute of Limitations Order."  Thus, for the purposes of making amendments relevant to the statute of limitations, PTO 105 limited the substance of what Plaintiffs would be granted leave to file to: "factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals."  Plaintiffs' position is that PTO 105 impermissibly limited the ability of Plaintiffs to allege case specific facts without conducting the necessary analysis of whether to grant leave under Rule 15. Nonetheless, the parties subsequently stipulated that Plaintiffs would "not to seek leave to amend SFCs to add or include any allegations that are inconsistent with PTO 105 or this Court's Orders addressing motions to amend SFCs, including any allegations that have been previously disallowed by the Court." MDL R. Doc. 11347. This was done to avoid the necessity of the Court having to rule on possibly hundreds or thousands of amendments.  In

exchange for the Plaintiffs' stipulated agreement, the Defendants agreed that if a "Defendant seeks dismissal of any case based on a statute of limitations, it agrees that it will not argue waiver based on any Plaintiff's refraining from amending her SFC to include allegations inconsistent with PTO 105, as described in paragraph 2 hereinabove." Id. Accordingly, there was a proverbial "pin" put on this issue. Despite this express agreement, Defendants now argue to this Court, precisely what they stipulated they would not argue, that Mrs. Kelly has waived her right to amend her complaint because the "deadline" to amend in the MDL has passed. That argument falls flat, as there has never been a case-specific deadline in Mrs. Kelly's matter for amendments of pleadings.

Furthermore, many short form complaint amendments have been accomplished after the deadline established by PTO 105 for other reasons, i.e., amending named defendants and/or amending causes of action. Thus, it is simply incorrect that all deadlines for amending complaints have passed. Rather, under Rule 54(b) this Court has vast discretion to reconsider the interlocutory ruling in PTO 105 that limited Plaintiffs' ability to seek leave to amend under Rule 15. Fed. R. Civ. P. 54(b).

The short form complaint employed in the MDL did not enumerate sections where plaintiff-specific facts were appropriate beyond having the Plaintiff identify where she lived, where she was treated, the time-period of her use of the drug in question, the time-period her injury occurred and a brief description of her injury. The short form complaint did not ask Plaintiff to assert case-specific factual

15

information concerning when she learned the underlying cause of her injury.  As such, Mrs. Kelly has been unable to plead any additional case specific facts such as when she learned of the connection between her injury and her use of Taxotere yet Sanofi seeks to dismiss her claims as set forth above on statute of limitations grounds based upon the minimal case specific allegations contained in Mrs. Kelly's short form complaint.  Furthermore, when filing her short form complaint, Mrs. Kelly was bound to the pleading of those causes of action as set forth in the Master.  To date, Mrs. Kelly has not had an opportunity to amend her complaint to allege specific acts of concealment which hindered her (and her doctors') ability to discover the connection of her injury to Taxotere.

Defendants' Position:

Sanofi objects to any attempt by Plaintiff to amend the complaint.  Plaintiffs' Second Amended Complaint remains the operative pleading.  Transfer Order at 3.  The transferor court denied Plaintiffs' Motion for Leave to File Plaintiffs' Third Amended Master Long-Form Complaint on December 12, 2019.  In denying Plaintiffs' motion, the court explained that "the main reason Plaintiffs wish to amend the Long-Form Complaint at this juncture is to save cases that are otherwise subject to dismissal for being filed too late."  *Id.* at 3-4.  The court noted in its transfer order that: "All deadlines for Plaintiff to amend their individual complaints without leave of court have passed."  *Id.*  As such, Sanofi objects to any attempt by Plaintiff to amend the pleadings.  Sanofi notes that Plaintiff has not and cannot adequately plead punitive damages, and Sanofi objects to Plaintiff seeking punitive

damages. If the Court is inclined to permit amendment, Sanofi requests full briefing on the issue.

C.   Discovery should be conducted in phases:

☐  No.
☒  Yes

**<u>Stay</u>**

Based on the volume of remanded cases, Sanofi may request this Court to consider unique and efficient ways to manage the volume of cases through a stay or bifurcation.

The MDL Court intends to transfer another approximately 6,000 individual pending actions, in which Sanofi is the only named defendant, to their respective federal districts on a rolling basis in the near future.

Of the 6,000, approximately 500 cases will likely end up transferred to Florida District Courts.  None of these cases will have undergone <u>any</u> case-specific fact discovery, beyond the exchange of Plaintiff and Defendant Fact Sheets.

To conserve resources, especially judicial resources, Sanofi believes a stay would benefit the Court in determining the best way to manage this large influx of cases.  Once the cases are transferred, the Court could treat the cases as a mini-MDL and, through a selection process, pick the most representative case to work up and set for trial.

**Early Dispositive Motion Practice**

If the Court is not inclined to stay this action, Sanofi suggests that the Court does not enter a scheduling order but instead permits the plaintiff and prescribing oncologist depositions.   After those have been taken, Sanofi requests early dispositive motion practice on statute of limitations and learned intermediary.

There have been no case-wide dispositive rulings in the MDL Court, whether on preemption, medical causation, or statute of limitations.    Sanofi notes that Judge Corley in the Northern District of California permitted early motion practice in a remanded case, similar to this one.  Judge Corley heard oral argument on that motion on September 26, 2023.  After reviewing the parties' submissions and hearing oral argument, Judge Corley agreed that the case was time barred and dismissed it.

The MDL Court granted judgment on the pleadings in all Mississippi cases with facially untimely complaints—though declining to rule on similar motions based on state law from outside the Fifth Circuit.  *See In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 18-11728, 2021 WL 230243, at *5 (E.D. La. Jan. 22, 2021), *appeal dismissed sub nom. Greer v. Sanofi U.S. Servs., Inc.*, No. 21-30099, 2021 WL 3674122 (5th Cir. June 17, 2021); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Doc. 15322 (E.D. La. Dec. 29, 2022);  Transfer Order, at 26–27.

The Fifth Circuit, for its part, has found that publicly available internet, media, and medical sources alleging a connection between Taxotere and persisting hair loss as early as 2006 would have alerted a reasonably diligent Plaintiff to her

potential claims.  *See* Transfer Order, at 31–32 (*citing In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 393–94 (5th Cir. 2021) (affirming summary judgment on limitations grounds in three cases) *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 860 F. App'x 886 (5th Cir. 2021) (affirming summary judgment on limitations grounds in one case).

Only two of approximately 23 Sanofi cases selected for MDL bellwether treatment ultimately made it through case-specific discovery and dispositive motion practice to trial.  *See, e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 393–94 (5th Cir. 2021) (affirming summary judgment on limitations grounds in three cases); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704 (5th Cir. 2021) (affirming summary judgment on warnings causation grounds); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 18-11728, 2021 WL 230243, at *5 (E.D. La. Jan. 22, 2021), *appeal dismissed sub nom. Greer v. Sanofi U.S. Servs., Inc.*, No. 21-30099, 2021 WL 3674122 (5th Cir. June 17, 2021) (granting judgment on the pleadings on limitations grounds); *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 2:16-md-02740, Doc. 15322 (E.D. La. Dec. 29, 2022) (denying reconsideration of dismissal of 223 non-bellwether cases on limitations grounds under Mississippi law, based on the reasoning in Greer).

Six MDL bellwether Plaintiffs were dismissed on dispositive motions after limited discovery including only 1-4 depositions.  *See* Transfer Order at 26–27.  In addition, summary judgment on limitations was recently granted in all four bellwether cases in consolidated Taxotere Multi County Litigation ("MCL") in

New Jersey state court, following limited discovery. *See, e.g.*, *Adams v. Sanofi U.S. Servs.*, 2023 N.J. Super. Unpub. LEXIS 927, at *1.

The MDL Court and New Jersey MCL Court accepted and ruled on dispositive motion briefing in bellwether cases after limited "phase I" discovery had been completed. These Courts found the testimony of a plaintiff and her prescriber, and related documentation, sufficient to address the threshold issues of timeliness and warnings causation.*

Where appealed, the Fifth Circuit affirmed these rulings on these limited records. No Court has required or considered expert evidence when ruling on these issues, or found a motion following plaintiff and prescriber depositions premature.

Given this experience and the extensive case-specific discovery still needed, Sanofi believes that early dispositive motion practice is the most efficient path for addressing this case. In particular, Sanofi anticipates filing early dispositive motions addressing the following issues: Whether plaintiff has adequately pled her claims; whether plaintiff's claims are barred by the statute of limitations; whether plaintiff's claims are barred by the statute of repose; and whether plaintiff's claims fail for lack of warnings causation.

Recognizing the prudence of this approach, other U.S. District Courts who have received recent transfers from MDL 2740 have approved Sanofi's plan to file early dispositive motions, including the Northern District of Alabama, the

---

* As noted above, the MDL Court granted judgment on the pleadings on the basis of limitations in all cases governed by Mississippi law—without even limited case-specific discovery.

Northern District of California, as well as the Middle District of Florida, the Northern District of Georgia, and the Eastern District of Pennsylvania. *See, e.g., Hall v. Sanofi U.S. Services Inc. et al*, Case No. 8:23-cv-1176-KKM-TGW, Case Management and Scheduling Order (Doc. 32).

### **Consolidation**

Plaintiff's Position:

Plaintiff states that because common issues have been addressed in the MDL, and given case-specific discovery and trial remain, that consolidation is neither practical nor appropriate.  If the Court believes consolidation is appropriate, Plaintiff respectfully suggests that consolidation for all purposes, including for trial, would be more appropriate given the overlapping liability evidence, general causation evidence, and general witnesses and general expert testimony, as well as efficiency considerations given MDL plaintiffs are cancer survivors who have been awaiting trial for years.

Defendants' Position:

Sanofi opposes consolidation of cases for trial, which would need to be addressed through formal motion practice.  As a threshold matter, each Plaintiff in this litigation has a unique treatment history and medical history.  For instance, there are multiple forms of breast cancer, with district tumor markers.  Because of that, there are different chemotherapy treatment regimens with different medications each plaintiff receives.  Further, the plaintiffs will have received treatment during different time periods.  They will have seen different doctors.

They will have different risk factors for hair loss.  Some may have hair loss.  Some may not.  Further, the warnings, knowledge, and information plaintiffs have will differ.  Individual issues will predominate.  And consolidation would prejudice Sanofi, cause juror confusion, and result in judicial inefficiency.  As such, Plaintiffs' claims do not share common facts that justify joining claims.

Further, in four similar cases that were recently remanded to the Central District of California, Judge Vera initially consolidated the four cases for trial.  But after reviewing the parties' submissions, including the Rule 26(f) report Judge Vera sua sponte reversed himself and noted: "the Actions identified above will not be consolidated, either for pre-trial motion practice or trial.  The Court concludes, based on all the submissions noted above, that Plaintiffs' defenses to Defendant's likely dispositive motions will depend in large part on individualized facts that do not lend themselves to consolidated motion practice.  Moreover, as discussed at the recent Scheduling Conference, Plaintiffs will likely each present at trial different medical diagnoses, different combinations of prescription medications, different causation arguments and expert opinions, and different damages models.  For all of these reasons, the Court concludes that a consolidated trial will not serve the interests of judicial efficiency."

D.   Are there issues about disclosure, discovery, or preservation of electronically stored information?

☒  No.
☐  Yes; describe the issue(s).

E.   ☒   The parties have considered privilege and work-product issues, including whether to ask the Court to include any agreement in an order under Federal Rule of Evidence 502(d).

F.   The parties stipulate to changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and Local Rule 3.04 or other limitations:

    ☒   No.
    ☐   Yes; describe the stipulation.

## 10. Request for Special Handling

☒   The parties do not request special handling.

☐   The parties request special handling. Specifically, describe requested special handling.

☐   Enter party's name unilaterally requests special handling. Specifically, describe requested special handling.

## 11. Certification of familiarity with the Local Rules

☒   The parties certify that they have read and are familiar with the Court's Local Rules.

## 12. Signatures

_/s/ Connor J. Sears_
Connor J. Sears
LEAD COUNSEL
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547
csears@shb.com

_/s/ Russell W. Lewis_
Russell W. Lewis
Johnson Law Group
2925 Richmond Ave. #1700
Houston, TX 77098
T: (713) 626-9336
F: (713) 583-9460
RLewis@johnsonlawgroup.com

**_Counsel for Plaintiff Patricia Kelly_**

Ara K. Ayvazian
**SHOOK, HARDY & BACON L.L.P.**
100 North Tampa Street, Suite 2900
Tampa, FL 33602-5810
Telephone: 813-202-7100
Facsimile: 813-221-8837
aayvazian@shb.com

*Counsels for Sanofi US Services Inc.,*
*f/k/a Sanofi-Aventis U.S. Inc. and*
*Sanofi-Aventis U.S. LLC*